■ AUDREY R. McTIGHE, Respondent, v MICHAEL J. McTIGHE, Appellant. [607 NYS2d 174] —Weiss, J. Appeal from a judgment of the Supreme Court (Kahn, J.), entered March 24, 1993 in Albany County, upon a decision of the court in favor of plaintiff.

On or about October 10, 1986, the parties agreed to settle their pending divorce action pursuant to a stipulation which provided, *inter alia*, for monthly maintenance to plaintiff of $1,170 for six years commencing January 1, 1987 and specified circumstances for defendant's entitlement to credits or deductions. The stipulation was incorporated by reference but did not merge into the divorce judgment. The parties executed a second separate and distinct instrument dated October 14, 1986 in which they agreed to share equally one half of any profits or distribution from a partnership named Rancho Bernardo Venture (hereinafter RBV) which held title to real estate in San Diego, California, and also established their individual ownership shares in RBV.

In an amended complaint served March 31, 1992, plaintiff alleged causes of action for $15,070 claimed due as her share of RBV distributions, for $18,405 in unpaid maintenance and for legal fees. The amended answer asserted affirmative defenses of laches, equitable estoppel and/or waiver, and a counterclaim seeking reformation of the stipulation. Supreme Court granted partial summary judgment to plaintiff on the first cause of action, holding that she was entitled to an accounting of all moneys and property received by defendant from RBV. The court also found that the settlement stipulation was ambiguous, thus giving rise to triable factual issues which precluded summary judgment on the second cause of action. Following a bench trial, Supreme Court resolved the ambiguities in favor of plaintiff and granted judgment to her for $47,301.34. This appeal by defendant ensued.

The issues at trial and on this appeal appear clearly discernible. Plaintiff contends that she was entitled to 25% of all RBV distributions and to six years of maintenance at $1,170 each month, plus child support and tuition for the children's private school for the 1986-1987 school year. By simply sub-

tracting the sums received from the sums due for the months involved, plaintiff arrived at the shortfall demanded in the amended complaint. Defendant, on the other hand, argues that clauses 16 (b) and 18 of the settlement stipulation operate to reduce his maintenance obligations to a net level or "floor" of $645 per month by authorizing him to offset the money he paid to plaintiff in RBV distributions, and possibly to even further offset his liability for school tuition. In his testimony, defendant conceded that he had not paid plaintiff $3,000 each month in RBV distributions equal to what he received from RBV, nor had he paid her $1,170 as maintenance commencing January 1, 1987 pursuant to the stipulation of settlement in the divorce action. Simply put, on the RBV payments he shorted her $1,830 for eight months between November 30, 1988 and June 30, 1989 and $430 for the month of July 1989, which totals the $15,070 awarded plaintiff on her first cause of action.

With respect to the monthly maintenance, Supreme Court found that defendant was entitled to deduct from the $3,000 monthly RBV distributions amounts he paid in monthly maintenance, with the limitation that the maintenance payment was not to be reduced below $645 per month. For nine months in 1988 and 1989 defendant paid no maintenance at all, leaving plaintiff short the $645 monthly minimum totaling $5,805. In 1990 and 1991 defendant paid only $120 from January through June instead of $645 per month, leaving plaintiff short $6,300. In 1992, she received $120 in January, February and March instead of $645 each month, leaving her short $1,575. In all, plaintiff was shorted $13,680, which Supreme Court awarded on her second cause of action. In addition, the judgment included interest on the unpaid amounts, counsel fees of $7,549.50 on the third cause of action, and costs and disbursements.

Because the parties agree that they are bound by Supreme Court's determination that the settlement stipulation contains ambiguities *(see generally, Nahl v Nahl,* 177 AD2d 777, 778; *see also, Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191), resolution of those ambiguities rested with the trier of fact *(see, Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172; *Pikul v Clough, Harbour & Assocs.,* 190 AD2d 932, 933; *cf., Policastro v Town of LaGrange,* 193 AD2d 950, 952-953). Notwithstanding defendant's extensive and seemingly limitless recitations to explain his interpretation of the stipulation, he conceded that neither the terms nor the concept of "gross up" and "recapture of past moneys paid" appear

anywhere in the instrument. On the other hand, there is no evidence that plaintiff ever intended to accept less than an equal share of RBV distribution or less than the minimum specified maintenance payments.

Supreme Court was free to reject defendant's interpretation *(see, Rentaways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 349; *Gould v Simplified Tax Records,* 10 AD2d 303, 305-306), and this Court should defer to the first-hand assessment of the witnesses by Supreme Court and the evidence in the record *(see, Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499; *McPartlon v Green Is. Assocs.,* 178 AD2d 892, 894, *lv denied* 79 NY2d 758), particularly on matters of credibility *(see, Briggs v Di Donna,* 176 AD2d 1105, 1107; *Clark v Vicinanzo,* 151 AD2d 951, 952).

Cardona, P. J., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.